COMMONWEALTH *vs.* JACOB SCHWARTZ.

Suffolk.    November 18, 1907. — January 1, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Pawnbroker.    Words,* "Business."

*It seems,* that one, who has no license to carry on the business of pawnbroking, may have committed one or more acts of receiving articles on pawn and not be guilty under a complaint which alleges that he was carrying on the business of pawnbroking without a license, since it is the occupation and not the act of pawnbroking that is complained of.

At the trial of a complaint under R. L. c. 102, §§ 33, 38, charging the defendant with carrying on the business of pawnbroking without a license, it appeared that the defendant had a license to buy and sell second-hand articles but did not have a license to carry on the business of pawnbroking, and a witness testified that, as he was seeking a place to pawn his overcoat, he was passing the store of the defendant and his partner when they accosted him and asked him whether he wanted to buy some clothes; that, on his stating that he did not wish to buy but desired a loan on his overcoat, he was asked to step inside; that he did so, and, after negotiations, the defendant paid him $2.50 and took his overcoat; that, on his asking for a ticket, one of the partners, both being present, stated that they did "not give tickets on overcoats, and that his overcoat would be all right, and that he could get it at any time he called for it by paying $3, which would be fifty cents interest," and that he was repeatedly assured by them that he could have his coat at any time he called for it. There was evidence that the record of the transaction made by the defendant and his partner was of a purchase by them, and that it was so reported to the police department under the terms of their permit. The defendant contended that there was evidence of a single act of pawnbroking only, and not of a carrying on of such a business. *Held,* that there was evidence warranting a finding that the defendant was carrying on the business of pawnbroking without a license.

COMPLAINT, taken out and sworn to in the Municipal Court of the City of Boston December 4, 1906, charging the defendant and one Harris with carrying on the business of pawnbroking without a license.

On appeal to the Superior Court the case was tried before *Gaskill,* J.    It appeared that the defendant and a partner were licensed only to carry on the business of buying and selling second-hand articles on Salem Street in Boston, that the record on their books of the transaction with McKinnon, the testimony regarding which is stated in the opinion, was of a purchase by them, and that, the next day after the transaction, it was so re-

o

ported by them to the police department in the regular course of their business.   Other facts are stated in the opinion.

At the close of the evidence, the presiding judge refused, as stated in the opinion, to grant requests of the defendant for rulings, the jury found the defendant guilty, and the defendant alleged exceptions.

The third request, referred to in the next to the last paragraph of the opinion, was as follows: " 3.  The evidence does not warrant the jury in finding that the defendant was concerned as an actor in the carrying on of the alleged business of pawnbroking so as to make him a proper guilty defendant in this prosecution."

*N. Wolfman,* for the defendant.

*M. J. Dwyer,* Assistant District Attorney, for the Commonwealth, submitted a brief.

HAMMOND, J.   The defendant Schwartz was jointly charged with one Harris with carrying on the business of a pawnbroker without a license.   Harris pleaded guilty and was fined.

At the trial of Schwartz, upon whose exceptions the case is before us and whom we shall designate when using the word defendant in the singular, the evidence as to the nature of the transaction which took place between the witness and the defendants was conflicting, but it warranted a finding that the coat was not sold but was pawned to the defendant.   The record states that " the defendant is not charged, nor has he been shown, to have committed any other alleged act of pawnbroking."   We understand this to mean that there is no evidence either direct or circumstantial of any other contract of pawnbroking.   Hence, so far as respects any actual contract of pawnbroking, the government's case rests upon this one alone.   Such being the case, the defendant at the close of the evidence asked the court to rule, first, that the defendant had not been shown to have carried on the business of pawnbroking within the meaning of the statute, (R. L. c. 102, §§ 33, 38,) upon which the complaint was based, and second, that, even though the jury should find that the defendant did a single act of pawnbroking, unless they also found that he did at least one other such act, they should acquit him.   The court refused to give either instruction, but left the case to the jury under instructions which authorized them to convict if, at his place of business, the defendant did, as a part

of the business there carried on, take in property upon pawn. The defendant excepts to the refusal thus to rule, but does not appear to have taken any exception to the charge given.

In support of his requests the defendant insists that the complaint is for carrying on the business of pawnbroking; that this has reference to an occupation as such, and not merely to an act or even a series of acts unconnected with each other and performed not in the pursuit of an occupation or business; and hence that the proof of one single act alone is insufficient to warrant a conviction. It may be assumed in favor of the defendant that all this is correct, and that, if in this case the only evidence that the defendant was carrying on the business of pawnbroking is that he had once received on pawn a single article without any evidence as to the circumstances attending the act, or as to the subsequent conduct of the defendant when questioned as to the act, then the defendant's first request should have been given. The complaint was for carrying on the business and not for the act of receiving the coat on pawn. It is the occupation and not the act itself which is the thing of which complaint is made. There may be one or more acts of receiving articles on pawn, and yet no occupation.

But it by no means follows that in order to prove that one is engaged in the business it is necessary to prove more than one contract of pawn. Indeed it is conceivable that one may have entered upon the business and have had many articles tendered to him for pawn and considered the bargains offered to him by the owners, and yet, by reason of the inability of the parties to agree upon terms, no actual contract of pawnbroking may have been completed. Yet such a person is engaged in the business of pawnbroking, dull although it may be, within the meaning of our statute. As was well said in a case upon a similar statute as to the sale of intoxicating liquors, " It is the occupation and not the act of selling which is taxable." " There may be one or more sales and yet no occupation of selling, or there may be the occupation of selling without even a single sale." *Merritt* v. *State*, 19 Tex. App. 435.

The jury having found that the defendant had received the coat on pawn, had further to look into the question whether that act was an act done not incidentally to the business of buying

and selling second-hand articles for which the defendant was duly licensed, but in the independent business of pawnbroking; or, in other words, was the defendant engaged not only in the business for which he was licensed, but did he keep his shop open also for the transaction of pawnbroking as an independent business? Did he intend to carry on that business, and was this act done in pursuance of that intent and as a part of the business?

Upon this question the evidence was very suggestive. Mc-Kinnon testified that on November 14, 1906, he came to Boston from Brockton, and stayed over night in Boston; that on the fifteenth, being short of money, he went to pawn his overcoat so that he could obtain money enough " to carry him through "; that as he passed the defendants' store they were standing in front of the door and asked him if he wanted to buy some clothes; that he replied that he did not want to buy, but only wanted to get a loan on his overcoat; and that Harris then asked him to step inside and take off his overcoat. He further testified in substance that he pawned the coat, taking $2.50, which was all he needed; that he then asked for a ticket, but was told by one of the defendants (which one he could not tell), both being present, that " they did not give tickets on overcoats, and that his coat would be all right, and that he could get it at any time he called for it by paying $3, which would be fifty cents interest," and that, upon his saying that he did not wish to lose the coat, the assurance that he could have it at any time he called for it was repeated.

The facts which the jury may have found, namely, that Mc-Kinnon, after he had said he did not want to buy clothes, but only to procure a loan on his coat, was immediately invited into the store, and was asked how much he wanted on it, that the coat was received on pawn, and all without any hesitation on the part of the defendants or any statement that pawnbroking was not a part of their business, and that when McKinnon asked for a ticket he was told, not that they were not pawnbrokers, but that they did not give tickets on overcoats, were all circumstances which, taken in connection with the nature of the business which the defendants were licensed to carry on, indicated that the defendants had concluded to carry on the business of pawnbroking,

had entered upon that business by procuring a place at which it could be carried on, had made rules (probably with a view to concealment) as to the issuing of tickets, were ready to negotiate for loans, and that this coat was received on pawn not as an isolated act but in the course of that business.

All the subsequent conduct of the defendants tends to confirm this view. McKinnon testified that when, two weeks later, he went to the store of the defendants for his coat, they denied that he ever had been there, and said "it must be next door"; that he went into the next store, but, not finding his overcoat, he returned to the defendant's store and was again told that he had never been there before. He then reported to the police, who found on the defendant's book a statement that McKinnon had "sold" them an overcoat on November 15, 1906. It appeared that the defendant had sold the coat. McKinnon's story, if believed, tended to show that the defendant was trying to conceal the act of pawnbroking as if he was guilty of a criminal act. The single act of receiving a coat in pawn may have been no crime, if unconnected with carrying on the business of pawnbroking, but the act was a dangerous piece of evidence of crime, if done in the course of such business.

In view of the considerations above stated, we are of opinion that there was evidence that at the time the overcoat was received the defendant had embarked upon the business of pawnbroking, that this coat was received in pawn, not as an isolated act unconnected with that business, but in the course and in pursuance of that business, and hence that he was carrying on that business.

The instructions requested, including the third, were rightfully refused. No exception was taken to the charge.

Among the cases where the law applicable to the question arising on these exceptions is discussed, see *Commonwealth* v. *Ober*, 12 Cush. 439, 496; *Commonwealth* v. *Farnum*, 114 Mass. 267; *Merced County* v. *Helm*, 102 Cal. 159; *Merritt* v. *State*, 19 Texas, App. 435; *O'Neill* v. *Sinclair*, 153 Ill. 525; *Smith* v. *Anderson*, 15 Ch. D. 247, 276. The statement of Lathrop, J., in *Commonwealth* v. *Morris*, 176 Mass. 19, that the offence alleged (in that case it was engaging in or carrying on the business of making certain loans) " must be proved by showing a number of distinct acts of

the kind named in § 1," was said *alio intuitu,* and with reference to the facts of that case, and cannot be regarded as a general statement of the only way in which carrying on a business may be proved.

*Exceptions overruled.*