LEONARD BERNHARDT *vs.* ATLANTIC FINANCE CORPORATION.

Suffolk.   January 26, 1942. — March 25, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Small Loans. Usury. Bills and Notes,* Validity, Cancellation. *Contract,*
Validity, Cancellation. *Sale,* Conditional. *Equity Jurisdiction,* Can-
cellation, Usurious note, Plaintiff's clean hands. *Public Policy. Con-
stitutional Law,* Due process of law. *Statute,* Retroactive. *Equity
Pleading and Practice,* Appeal. *Words,* "Void."

Upon appeal from a final decree in a suit in equity, with a report of the
evidence and a report by the judge of all the material findings on which
the decree was based, such findings are not to be disturbed unless
plainly wrong, but this court should make such further material find-
ings as it deems to be justified by the evidence and give due weight
to them as well as to the judge's findings in disposing of the case.
A note for $283.20, payable in twelve monthly instalments, given in 1940
by the purchaser of an automobile to the seller as "evidence" of
a balance of $225 due on the purchase price plus a "finance charge"
of $58.20, and a contract of conditional sale under which the purchaser
agreed to make such payments and the seller retained title until they
all were made, were void, under the amended §§ 96–114 of G. L. (Ter.
Ed.) c. 140, in the hands of a finance company which engaged in the
business of making small loans without having a license therefor under
said statute and which for $225 received from the seller a transfer of
the note and the contract, where it appeared that the company par-
ticipated in the entire transaction with full knowledge of all the
pertinent facts.
Public policy did not regard the maker of a note and of a conditional
sale contract, which were acquired by a finance company in viola-
tion of the small loans act and were void in its hands, to be in pari
delicto with the company; he was entitled to maintain a suit in
equity against it for their cancellation.
St. 1941, c. 158, if applied to bar the maker's right to have cancelled a
note and conditional sale contract given in 1940 and void under the
small loans act, would be unconstitutional as depriving him of property
without due process of law.

BILL IN EQUITY, filed in the Superior Court on February
13, 1941.

The case was heard by *Morton,* J., and in this court was
submitted on briefs.

The conditional sale agreement, described in the opinion, set forth an account stating the "selling price" of the automobile as $345, adding thereto $58.20 as a "finance charge," making a "total time price" of $403.20; crediting against that amount a "cash down payment" of $120; and stating a net balance "in 12 monthly payments of $23.60 each, $283.20." This was followed by the statement: "Evidenced by purchaser's promissory note of this date bearing interest as therein stated. (Not as payment but as evidence of the amounts to become due hereunder.)" The interest so stated in the note was "at the rate of three per cent per month" "after maturity." A "condition," which was made a part of the agreement, was that, in "the event of buyer's failure to pay any of his indebtedness hereunder when due . . . seller and/or assigns may declare the entire amount then unpaid due and payable forthwith, and may . . . take possession" of the automobile.

The case was submitted on briefs.

*S. T. Lakson,* for the defendant.

*M. M. Goldman & H. Robinson,* were permitted to file a brief as amici curiae.

*M. Brown,* was permitted to file a brief as amicus curiae.

No argument nor brief for the plaintiff.

DOLAN, J. This is a bill in equity in which the plaintiff seeks to have a negotiable promissory note and a conditional sale agreement attached thereto declared void because of alleged violation of the provisions of G. L. (Ter. Ed.) c. 140, relating to small loans. The judge made a report of material facts found by him, and entered a decree declaring the instruments in question void and directing the defendant to deliver them to the plaintiff. The defendant's appeal from this decree brings the case before us.

Since the evidence is reported in full questions of fact as well as of law are brought before this court, whose duty it is to examine the evidence and to decide the case upon its judgment as to the facts, giving due weight to the findings of the trial judge, which will not be reversed unless plainly wrong. *Kevorkian* v. *Moors,* 299 Mass. 163, 166. *Culhane* v. *Foley,* 305 Mass. 542, 543. The recital of the judge in

his report of material facts that the facts therein set forth are all the material facts upon which his order for decree was based does not affect this rule. It is still for us to decide the case upon our judgment as to the facts, giving due weight not only to those actually found by the judge but also to all other facts disclosed by the evidence, which we find ourselves. *Atlantic National Bank of Boston* v. *Hupp Motor Car Corp.* 298 Mass. 200, 202. The present case is not one where a report such as that under discussion is made by the judge but the evidence is not reported, and where accordingly there is no room for implication of further findings and the decree must stand or fall upon the facts found in the report. See *Sidlow* v. *Gosselin*, 310 Mass. 395, and cases cited.

Material facts disclosed by the evidence, including those recited in the judge's report of material facts, may be summarized as follows: The defendant is engaged in the business of "financing and loaning moneys." It is not licensed to conduct the business of making small loans. It had engaged in other transactions similar to the one involved in the present case, where as here the amount paid by it for notes and accompanying conditional sales agreements was less in each case than $300.

For some time prior to July 29, 1940, the plaintiff was negotiating with the Zanditon Auto Sales, Inc., hereinafter referred to as the dealer, relative to the purchase of a secondhand automobile at a price of $345. He was unable to pay this sum in cash. As a result of a conversation with the dealer, he went to the office of the defendant two or three days before July 29 and talked with its president and treasurer, one Epstein. The plaintiff told Epstein that he was supposed to meet Zanditon, the president of the dealer, there and said: "I am the fellow who was buying a car from Zanditon and Zanditon wanted you to purchase the paper and you refused to." Epstein replied: "That is right, the down payment [$55] is not sufficient for us to purchase the paper." Zanditon came in and after some conversation Epstein said: "If the down payment was larger I would purchase the paper for $225." Zanditon

then asked Bernhardt if he could raise the money and the latter said that he thought it could be arranged. Epstein then said that if a down payment was made by the plaintiff of $120 he would purchase the paper. On or about July 29, 1940, the plaintiff purchased the vehicle from the dealer for $345, making a down payment of $120 partly in cash, and partly by note payable to the dealer, leaving a balance due of $225. In payment of this balance the plaintiff executed a note payable to bearer for $283.20. This note was attached to a conditional sale agreement, which was also entered into on the same date between the dealer and the plaintiff, which set forth a "Total Cash Selling Price" of $345 and a finance charge of $58.20. The note was expressed to be payable in twelve monthly instalments of $23.60 each. On the same day the dealer indorsed the note in blank and executed an assignment of the contract and delivered the instruments to the defendant. The form of assignment was printed on the back of the agreement to which the note was attached. The form upon which these instruments were executed had been furnished by the defendant to the dealer. The defendant bought the "paper," that is, the note and agreement, for $225, which it paid to the dealer by check dated July 29, 1940. The discount of $58.20, which is to be treated as interest (*Cuneo* v. *Bornstein*, 269 Mass. 232, 236. *Noteman* v. *Welch*, 26 Fed. Sup. 437, 440) exceeded by far the twelve per cent permitted to be charged by persons who engage in the business of making loans of $300 or less without having obtained a license to carry on such business from the commissioner of banks as provided in G. L. (Ter. Ed.) c. 140, § 96, as amended by St. 1934, c. 179, § 2, so far as here pertinent. See also § 90 as amended by § 1 of said c. 179. The plaintiff made four of the monthly payments provided for in the note and agreement. Two of these payments were tendered later than the due dates and in connection with these payments the defendant required the plaintiff to pay two "reinstatement charges" of $1.50 each. In his report of material facts the judge ruled in effect that the transaction was void and that it was not exempt under St. 1941,

c. 158, from the provisions of G. L. (Ter. Ed.) c. 140, §§ 96–114, in the amended form in which they appeared when the transaction involved was entered into.

We first consider whether the transaction was void under the governing statutes in effect at the time of its consummation. We are of opinion that the proper conclusions from the facts hereinbefore recited are that the defendant bought the note and agreement in question for less than $300; that it had entered into other transactions of a similar character; that it thus engaged in the business of making small loans; that the amount exacted in the present case for interest and other expenses exceeded in the aggregate more than twelve per cent per annum, and that the defendant was not licensed to engage in the business of making small loans as required by G. L. (Ter. Ed.) c. 140, § 96, as amended by St. 1934, c. 179, § 2. It follows as matter of law that the note is void under the provisions of § 103. *Modern Finance Co.* v. *Holz*, 307 Mass. 281, and cases cited. The word "void" as employed in § 103 is used in its strict technical sense. *Cuneo* v. *Bornstein*, 269 Mass. 232, 236–237. The present case is not distinguishable from the *Modern Finance Co.* case except that in the latter case the action was that of the indorsee-lender against the dealer-indorser, and that there the automobile had been repossessed by the plaintiff and sold under the conditional sale agreement and the only question involved was the validity of the note. We think that the facts that in the present case the suit is that of the maker against the defendant which bought the note, and that the automobile has not been repossessed by the defendant, do not take the case out of the principles laid down in the *Modern Finance Co.* case, at least so far as the note is concerned, and that under those principles the note is void under the statutes in effect at the time of its execution and purchase by the defendant.

We consider the further question whether in the circumstances of the case hereinbefore set forth, the conditional sale agreement is also void, as decreed by the judge. If the requisite facts are shown, illegality, such as usury, is sufficient ground to justify application of the equitable remedy

of cancellation of the contract. Pomeroy, Eq. Jur. (5th ed.) §§ 403 (pages 139–140), 930, 937, 1377. Chafee, Cases on Equitable Remedies, 347, and cases cited. Under the provisions of the conditional sale agreement in the present case title to the vehicle was retained to secure the payment of the balance of any indebtedness thereon. The note and agreement were executed simultaneously. The details of the entire transaction, under which the defendant was to and did advance the balance of the money required for the purchase of the vehicle on unlawful terms as to interest, were not only known to and agreed to in advance by the defendant but were dictated by it. The whole transaction was tainted with illegality, since under the statute the note, payment of which was secured by the conditional sale agreement, was void as before stated. Where public policy is considered as advanced by allowing either of two participants, or at least the more excusable of the two, to sue for relief against the transaction, then relief is given to him. Pomeroy, Eq. Jur. (5th ed.) § 403. *Bredin's Appeal*, 92 Penn. St. 241. From considerations of public policy the plaintiff is not regarded as standing in pari delicto. Pomeroy, Eq. Jur. (5th ed.) § 937.

In *Burnes* v. *New Mineral Fertilizer Co.* 218 Mass. 300, the defendant contended that, where a negotiable security is deposited as collateral security for a loan made in violation of the small loans act, not only is the deposit of the security void, but the security itself by force of that act becomes a nullity so that if it is afterwards separated from the void loan and bought in good faith by an innocent purchaser for value no recovery can be had upon it. The court, however, sustained the security right of the plaintiff who had acquired it from a party who bought it in good faith and without notice. See *Drury* v. *Morse*, 3 Allen, 445, 448, 450; *Richardson* v. *Brackett*, 101 Mass. 497, 503, 504; *Webb* v. *Johnston*, 246 Mass. 229, 234; *Pietrzykowski* v. *Davis*, 250 Mass. 372, 375.

In the instant case the defendant through its president and treasurer had notice of all the facts, and must be deemed to have had notice that the terms upon which it advanced

the money were in violation of the statute, that the note was wholly void, and that therefore no recovery could be had thereon. Williston, Contracts (Rev. ed.) § 1582, and cases there collected.

It appears from the cases to which we have referred that the decisive question is whether the holder of the security interest had notice or knowledge of the illegality of the debt secured at the time he acquired that interest, or whether he had notice or acquired knowledge subsequently thereto. See *Baker* v. *Collins*, 9 Allen, 253, 254. It is true that the statutes (§§ 96–114) do not specifically provide that a conditional sale agreement given to secure the payment of a void note shall likewise be void. But in the circumstances of the present case where the transaction was tainted with illegality in its inception to the knowledge of the defendant, the security holder, at the time of its acquisition, relief may be given not only by declaring the note to be void, but also by declaring the contract of conditional sale, the security given to secure the payment of the note, void as well. In *Thomas* v. *Burnce*, 223 Mass. 311, 312, a case involving the small loans act, the court said, "Independently of the statute 'courts of equity will grant relief against usurious contracts no matter what may be their form and will permit no shift or device of the creditor to shield him in taking more than legal interest on a loan.' *Horner* v. *Nitsch*, 103 Md. 498." In the circumstances of the present case, to hold the transaction in question void as to the note, but valid as to the conditional sale agreement, would be to defeat the public policy of the Commonwealth declared in the governing statutes in force when the transaction was entered into. *Harrison* v. *Hannel*, 5 Taunt. 780. See *Cuneo* v. *Bornstein*, 269 Mass. 232, 237. Tested by those statutes the conditional sale agreement was then void.

The question remaining to be considered is whether St. 1941, c. 158, if applied to the case at bar would have the effect of depriving the plaintiff of property without due process of law in violation of the provisions of arts. 1, 10 and 12 of the Declaration of Rights of the Constitution of

this Commonwealth. Section 1 of that statute amends G. L. (Ter. Ed.) c. 140, § 96 (as amended by St. 1934, c. 179, § 2) by adding to the sentence providing that "The buying or endorsing of notes or the furnishing of guarantee or security for compensation shall be considered to be engaging in the business of making small loans within said sections" (§§ 96–114) the following, "but the foregoing provisions of this sentence shall not apply in the case of any transaction which involves any note or other instrument evidencing the indebtedness of a buyer to the seller of goods, services or insurance for a part or all of the purchase price." Section 2 of St. 1941, c. 158, provides as follows: "This act shall apply in the case of any transaction entered into prior to, on, or subsequent to its effective date which involved or involves any note or other instrument evidencing the indebtedness of a buyer to the seller of goods, services or insurance for a part or all of the purchase price." Section 3 provides in substance that if any provisions of the act be held invalid by "any court of final jurisdiction" the remainder of the act shall not be affected thereby.

It would serve no useful purpose to review the many decisions of this court in which the constitutionality of retroactive legislation has been discussed. There is a collection of such cases in *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, and the subject is dealt with in the recent cases of *Mulligan* v. *Hilton*, 305 Mass. 5, and *Segal* v. *Switzer*, 305 Mass. 27. An examination of the decisions of this court dealing with the subject demonstrates that while it is settled that retroactive legislation that relates to matters of procedure or remedy is not violative of any constitutional provisions, nevertheless it is firmly established as a settled principle that "A statute cannot constitutionally impose an obligation with respect to a transaction that at the time it took place gave rise to no obligation." *Mulligan* v. *Hilton*, 305 Mass. 5, 10, and cases cited.

The provisions of G. L. (Ter. Ed.) c. 140, § 96, as amended, and in force when the transaction in question took place, were not intended to prescribe a form or mode of procedure or remedy, but rather were intended to and did create "a

vested right or interest in the debtor, which he can insist upon and enforce . . . ." *North Bridgewater Bank* v. *Copeland,* 7 Allen, 139, 141.   To hold that the retroactive provisions of St. 1941, c. 158, were applicable to the transaction in question would be to impair the rights of the plaintiff existing before its enactment.   Such rights are in every sense property rights and cannot be constitutionally impaired by subsequent legislation.   *Frank Kumin Co. Inc.* v. *Marean,* 283 Mass. 332, 335, 336.   *Ziccardi's Case,* 287 Mass. 588, 591.   See *McGray* v. *Hornblower,* 298 Mass. 334; *Worcester* v. *Bennett,* 310 Mass. 400, 402.

In the present case the statutes in force when the transaction took place made the note not voidable, but void in the strict technical sense.   *Cuneo* v. *Bornstein,* 269 Mass. 232, 236.   *Modern Finance Co.* v. *Holz,* 307 Mass. 281, 285. It was a nullity, without any force and effect.   It was not binding upon the plaintiff.   Hence no obligation of the plaintiff arose upon it.   For reasons already given the conditional sale agreement was likewise void.   It follows that to hold that the retroactive provisions of St. 1941, c. 158, are applicable to the transaction in question would be in effect to appropriate property of the plaintiff without due process of law in violation of arts. 1, 10 and 12 of the Declaration of Rights of the Constitution of this Commonwealth.   There is nothing in *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, considered as a whole, to support the contention of the defendant to the contrary. Nor is there anything in *Brown* v. *Boston & Maine Railroad,* 233 Mass. 502, essential to the result there reached, that is in conflict with what we have said here.

*Decree affirmed with costs.*